# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HAIBAO WANG, Plaintiff, | ) | Case No. 26 C 5714 |
| v. | ) | |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | ) | Chicago, Illinois |
| | ) | October 13, 2026 |
| Defendants. | ) | 9:04 a.m. |

TRANSCRIPT OF PROCEEDINGS - TELEPHONIC STATUS
BEFORE THE HONORABLE ANDREA R. WOOD

APPEARANCES:

| | |
|---|---|
| For the Plaintiff Wang: | YK LAW LLP<br>BY: FAYE Y. DENG<br>445 S. Figueroa Street, Suite 2280<br>Los Angeles, California 90071 |
| For the Third Party Amazon.com, Inc.: | KILPATRICK TOWNSEND & STOCKTON, LLC<br>BY: MATTHEW R. BARRETT<br>BY: JEREMY L. BUXBAUM<br>320 South Canal Street, Suite 4500<br>Chicago, Illinois 60606 |
| Court Reporter: | AMY E. WEAVER, RPR<br>Official Court Reporter<br>219 S. Dearborn Street, Room 2144D<br>Chicago, Illinois 60604<br>312-702-8865<br>Amy_Weaver@ilnd.uscourts.gov |

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard via telephone:)

THE CLERK: Calling case 26 CV 5714, Wang versus Schedule A Defendants, for status.

MS. DENG: Good morning, Your Honor. This is Faye Deng for plaintiff.

MR. BARRETT: Good morning, Your Honor. Matthew Barrett for Amazon.com.

MR. BUXBAUM: And good morning, Your Honor. Jeremy Buxbaum also for Amazon.

THE COURT: Thank you. Okay. So there was a motion filed by Amazon seeking to, you know, stay enforcement of the consent judgments that were entered and I'm assuming the same concerns may be present for any other effort to get a judgment down the road from defendants who are named in this case.

I've taken a look at the motion. I am somewhat familiar with the proceedings in front of Judge Kennelly. Perhaps I can get a little bit of a nutshell summary from Amazon's counsel of what the situation is and what you're asking for.

MR. BARRETT: Sure, Your Honor. This is Matthew Barrett again for Amazon.

Amazon became aware recently of -- some troubling concerning patterns in some Schedule A cases whereby many, if not all, of the Schedule A defendants who are named in those cases had their accounts previously frozen by Amazon for

independent enforcement reasons. And Amazon has reason to believe that certain individuals acting on behalf of the plaintiff are essentially colluding with the named defendants in an effort to obtain a Court order via a Schedule A matter like this one in order to extract funds that were already frozen by Amazon for, again, independent reasons.

So, for example, in this case, there are two consent judgment orders that we've moved to stay. It's Docket Number 27 and Docket Number 28 in this case. Those collectively affect 60 sellers, so 60 of the Schedule A defendants. All 60 of those sellers were the subject of Amazon enforcement action.

And there's also, in this instance, a mismatch of the product. So what I mean by that is the plaintiff in their complaint stated that the infringement relates to clothing or apparel that they're the plaintiff's trademark, but a number of the products sold by -- in fact, almost all of the products sold by the sellers, the 60 sellers that are affected by these two orders, are things having nothing to do with apparel, things like trash cans, rotating whiskey glass set, health supplements, medical supplies, kitchen tools, et cetera.

So the other -- one of the other sort of red flags, if you will, is that the consent judgment orders purport to be the result of a settlement that the plaintiff has reached with the 60 sellers, but that's all represented by the plaintiff. No

defendant has appeared in this case.

So for cases that sort of fit one or more of the criteria that I just laid out, Amazon has filed, out of an abundance of caution, a motion like the one before Your Honor seeking to stay that portion of the order that requires Amazon to turn over funds to the plaintiff.

Our preference would be to file some sort of joint status report after the October 28th hearing before Judge Kennelly in the *NextClimb* matter. That matter is set for argument on the 28th.

And that's, in a nutshell, why we brought the motion.

THE COURT: Thank you.

And, Attorney Deng, what is your position with respect to the relief?

MS. DENG: Your Honor, so before filing the motion, Amazon conferred with me regarding whether plaintiff would oppose a motion. However, because my client have ceased communicating with me for some time, I didn't have any information or instructions necessary to either oppose or consent to a motion on plaintiff's behalf. However, I told Amazon that plaintiff would not object to the motion.

THE COURT: That you wouldn't object to the filing of the motion? If I grant the request --

MS. DENG: I --

THE COURT: So do you object to the relief that they

are requesting, which would freeze and hold in abeyance any enforcement of the consent judgment?

MS. DENG: Your Honor, at this moment, I do not have any information or any instruction to evaluate or assess Amazon allegations, but I understand the seriousness of those allegations.

So after learning of Amazon's concerns -- and we also filed a similar motion on another matter that involved the same client. After the motion was filed, I attempted to communicate with my client to get more information and whatever other necessary instruction to evaluate and maybe respond to the issues raised by Amazon. However, the clients have ceased communicating with me and has not provided any information that I need.

So because of the client's failure to communicate in this matter and in at least another two or three matters, I have filed a motion to withdraw as counsel in another matter. So under this situation, my firm and I, we are not able to amenably address the factual issues raised by Amazon on behalf of plaintiff.

So our firm intends to file a motion to withdraw as attorney in this matter later today after the hearing.

MR. BUXBAUM: Your Honor, this is Jeremy Buxbaum on behalf of Amazon.

I would like a chance to respond to that point, but --

I don't want to interrupt if Your Honor has follow-up questions or anything, but I'd like to have a chance to respond before -- before Your Honor takes any action with regard to that comment.

THE COURT: Sure. Go ahead and respond.

MR. BUXBAUM: Okay. I think we appreciate everything that counsel is saying, but I will say we -- "we" being Amazon -- we are, as I think, made clear in the motion and made clear here in front of other judges, we continue to investigate the issue. As you know, Judge Kennelly is taking the issue very seriously. What we don't know is assuming -- you know, assuming, and we have reasonable belief to be the case, that what we allege is true. What we don't know is who is behind it. Is it the underlying clients? Are counsel involved as well? We just don't know.

And so for counsel to -- you know, whether it's in this case or other cases, but, obviously, this case is in front of you now -- to just withdraw is concerning to us and, I think, would be concerning to Judge Kennelly and the rest of the judges who are involved here because to the extent counsel is involved, I think, before they're able to withdraw and to go about their business, you know, the Court, the bench, and Amazon need to complete their investigation to figure out what is going on.

If not, this issue, this broad issue, is not simply about any one of these cases, but if this conclusion is going

on, then, you know, Amazon and, frankly, the bench needs to find a way to get to the bottom of it and, you know, essentially try to put an end to it.

And I think permitting counsel to just withdraw in the cases before you know whether counsel can foot this does not aid in that process.

THE COURT: And so counsel -- is Attorney Deng's firm involved in the case in front of Judge Kennelly?

MR. BUXBAUM: I do not believe they -- there's several cases by Judge Kennelly, but the *NextClimb* matter, which is the one that is set for hearing, I do not believe that that firm is involved, but there is overlap in front of -- yeah. Go ahead.

THE COURT: Are you seeing the same plaintiff's firm involved in multiple cases where you observed this activity?

MR. BUXBAUM: Yes. We are, Your Honor.

MR. BARRETT: Yes.

MR. BUXBAUM: And that is another one of the red flags when we see that. It, obviously, needs to be, you know -- you know, connected with other activity, right? That alone does not necessarily suspect anything nefarious. We get that. We're fair-minded, but that is another thing we are noting. There is absolutely overlap in some of these cases.

THE COURT: If I recall, this was a little bit of an unusual Schedule A case for me in that there were waivers of service that were filed by either defendants who entered into

the consent judgment.

MR. BARRETT: And, Judge, this is Matthew Barrett.

Again, just to add to what Mr. Buxbaum was explaining, we are -- Amazon filed about over 30 motions throughout the district substantially similar to this one, all in Schedule A cases, that raised the concerns that we laid out at the beginning of this call.

And we're starting to see some patterns in how people are responding to them. We've seen a number of voluntary dismissals filed by the plaintiffs in those cases; motions to withdraw; and, in some cases, indications that the plaintiff has -- their judgment has been fully satisfied despite the fact that Amazon, who holds the funds that were ordered to be turned over to the plaintiff, has not turned over those funds, which is inconsistent with the entire premise of the Schedule A case which is that an ex parte TRO and turnover order from the e-commerce custodian like an Amazon or Ebay is necessary because many of the defendants reside outside the country and would never willingly pay a judgment that would otherwise be outside of the Court's ability to enforce a judgment, right?

So the notion that now all of a sudden the plaintiffs have fully recovered seems inconsistent with the purpose in why Schedule A cases have developed in the way that they have.

And so to Mr. Buxbaum's point, I don't think that this sort of cut bait and run strategy, if anything, it just sort of

corroborates Amazon's suspicions here.

THE COURT: Yes. I don't believe that there was a TRO or preliminary injunction requested in this case. And, instead, once the groups of defendants filed their waivers of service, the parties went directly to requesting the entry of a consent judgment, which, again, is not what I'm accustomed to seeing, which does not necessarily mean that it's the result of collusion, but it is atypical.

Okay. So what I think Amazon is looking for is an order saying you don't have to take any action to execute on these consent judgments.

Was there a proposed order submitted to my proposed order email box?

MR. BARRETT: I'm not sure if there was, Your Honor, but we can submit one. But that -- to answer your question, that is the relief we're seeking.

THE COURT: And what is the language that you would like to see of such an order?

MR. BARRETT: I think --

MR. BUXBAUM: Go ahead, Matt. That's fine.

MR. BARRETT: Yeah. The "wherefore" clause in our motions sets out exactly what we're looking for is that the Court temporarily stay enforcement of the portion of the consent judgment orders which were dated September 14th, 2026, at Docket Number 27 and 28, the portions of those orders that

direct Amazon to transfer seller funds to plaintiff be temporarily stayed such that Amazon does not need to transfer any funds to plaintiff until further order of the Court.

THE COURT: Okay.

MR. BUXBAUM: And, Your Honor, this is Jeremy Buxbaum.

What we've seen in some of the other matters is, honestly, something very simple where we -- we've had some matters where the Court has just forgone a hearing like this and it's just -- we've just gotten, you know, an electronic order saying that our -- you know, motion for stay is granted. And it essentially says that any enforcement is stayed until, you know, further order from the Court. And then a lot of times it's asking for a joint status report in early November, and we think that makes sense here as well.

THE COURT: That's fine. I'll enter the requested order. Plaintiff's counsel hasn't provided any reason to deny the request on the merits.

So, Ms. Deng, if you feel it is necessary to file a motion to withdraw, you can certainly file that motion. However, I'm inclined to keep you in this case until this matter is sorted out. I'm sure you can appreciate the significance of the concerns that are being raised by Amazon here.

Certainly, there is a great potential for abuse in the Schedule A procedures that plaintiff's counsel have pursued,

which doesn't necessarily mean that that's what's going on in any particular case, but I think my colleague's decision to dig a little deeper makes sense. And I'm not inclined to have any further action taken here until I see what comes of that.

So you shouldn't expect that if you file a motion to withdraw, that it is necessarily going to be granted immediately. It would likely be entered and continued until such time as I have a better idea of what's going on with the consent judgments that were requested and granted in this case.

And I'll also note that even voluntary dismissals of action or other actions by the party that would normally result in a case being dismissed or closed, typically do not divest the Court of jurisdiction to address certain collateral matters, including if there is any reason to be considering sanctions or other kind of action based on what appears to be an abuse of the Court's processes.

Again, I'm not suggesting that's what's going on here. I don't have enough information to make any such allegations for sure.

But I do think that under the circumstances, it makes sense to maintain the status quo in this case until my colleague, who is digging a little deeper, has an opportunity to do so.

I do think a status report from the parties in, I guess, early November. Today is October 13th. If I have a

status report due November 13th, is that in line with what Amazon had in mind?

MR. BARRETT: That would be.

THE COURT: Okay. So I would like the status report November 13th to advise of the developments in the *NextClimb Investments* matter and whether any circumstances have changed that would warrant the Court reconsidering or modifying the stay of the proceedings. And we'll go from there.

Is there anything else from Amazon's counsel?

MR. BUXBAUM: Nothing from us.

MR. BARRETT: Does Your Honor want me to submit a proposed order or not?

THE COURT: Okay. If a minute order suffices for Amazon's purposes, I'll craft some language along the lines of what you proposed.

MR. BUXBAUM: I think that's fine.

MR. BARRETT: A minute order is fine. Yeah.

THE COURT: Good.

Ms. Deng, do you have any questions or concerns?

MS. DENG: Your Honor, if I may, I would like to briefly explain how this matter was handled as well as the other several matters that the same client involved.

So in each matter, this client reached out to my firm around April this year in each case. The client identified the defendants and provided the infringement evidence pertaining to

each defendant. In the beginning of our engagement, the client requested that it handle settlement discussions directly with the defendants.

So after obtaining information from Amazon's president as provided in the discovery order, I forwarded Amazon's production to the client. Subsequently, the client told me that it had reached a settlement agreement with certain groups of defendants and instructed me to file -- to prepare settlement agreements and motion for entry of consent judgments.

So basically my role -- my -- the role of my firm was primarily handle the litigation, the Court papers, based on information and settlement terms provided by the client.

And, to my knowledge, the client is not the plaintiff himself. The client is a cross-water e-commerce service provider and this client actually communicated directly with the plaintiffs in this matter.

But I understand Your Honor's concern in that respect. Probably I would not file a motion to withdraw.

THE COURT: I'm not sure that I understand the distinction you were drawing between the client and the plaintiff because the client is not the plaintiff.

MS. DENG: Right. Correct, Your Honor. This client is involved in few matters that my firm represents. This client is actually a cross-water e-commerce service provider

based in China.

So what -- so what worked was that this client has contact information with a bunch of individual or other entities who are the IP owner -- IP rights holder. So basically there's a e-commerce cross-water service provider contacted us and works as a bridge between the firm and the individual plaintiff, but -- yeah, that is what --

THE COURT: Okay.

MS. DENG: -- how it works.

THE COURT: I see. So, again, I am not making any accusations today. I don't have enough information to do that, and I don't know that there's been any misconduct or abuse of process. I'm just going to maintain the status quo here until I get a little bit more information.

I will say, though, that as counsel of record and the person who puts their name on documents that are filed with the Court, there is a certain responsibility that goes along with that. And perhaps the client is doing things without the knowledge of counsel and may be just utilizing counsel as a way to get documents filed in Court, but, as a member of the bar of this Court and somebody who has obligations under Rule 11 of the Federal Rules of Civil Procedure, an attorney has to take some responsibility if they are filing documents that may be improper in one way or another.

And, again, there are certainly situations where

clients do things without counsel's knowledge or approval, but I would certainly hope that any attorney who is a member the bar of this Court would not take a case just to serve as, you know, almost an administrative assistant to get things filed. There is a responsibility that goes along with being a member of the bar and putting your name on documents.

So I certainly take that seriously, and I hope that any counsel who appears in our Court takes that seriously as well.

So we'll see how things play out a little bit. I'm going to enter the requested order. I will see the status report and enter further dates and direction at that point in time.

MS. DENG: Yes, Your Honor. Thank you.

MR. BARRETT: Very good. Thank you, Your Honor.

MR. BUXBAUM: Thank you, Your Honor.

THE COURT: Thank you, counsel. Have a good day.

MR. BUXBAUM: You too.

MR. BARRETT: You too.

MS. DENG: You too.

(Concluded at 9:28 a.m.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Amy E. Weaver* *October 13, 2026*
Official Court Reporter